```
AVS0351
                                                    CV 2005 000207.00

                                          JUDGE: ASSIGNED JUDGE
-----------------------------------------------------------------
                    ALABAMA JUDICIAL DATA CENTER
                        CASE ACTION SUMMARY
                          CIRCUIT CIVIL
-----------------------------------------------------------------
  IN THE CIRCUIT COURT OF    MACON         COUNTY
     CSX TRANSPORTATION, INC. VS R.J. CORMAN DERAILMENT SERVICES,LLC ETAL
 FILED: 10/25/2005 TYPE: CONTRACT/EJMNT/SEIZU TYPE TRIAL: JURY        TRACK:
*************************************************************************
 DATE1:                 CA:                   CA DATE:
 DATE2:                 AMT:           $.00    PAYMENT:
 DATE3:
*************************************************************************
 PLAINTIFF  001: CSX TRANSPORTATION, INC.

                                    ATTORNEY: RICHARDSON MORRIS WADE
                    . AL  00000-0000  RICO26      2100 3RD AVE N STE 1100
                   PHONE: (334)000-0000
 ENTERED:  10/26/2005 ISSUED:                        BIRMINGHAM, AL  35203
 SERVED:              ANSWERED:         TYPE:             (205)250-5000
                                        JUDGEMENT:
-----------------------------------------------------------------
 DEFENDANT  001: R.J. CORMAN DERAILMENT SERVICES, L.L.C.
                 ONE JAY STATION             ATTORNEY:

                 NICHOLASVILLE, KY  40356-0000
                   PHONE: (334)000-0000
 ENTERED:  10/26/2005 ISSUED:  10/26/2005 TYPE:   CERTIFIED
 SERVED:              ANSWERED:         JUDGEMENT:
-----------------------------------------------------------------
 DEFENDANT  002: R.J. CORMAN RAILROAD GROUP
                 ONE JAY STATION             ATTORNEY:

                 NICHOLASVILLE, KY  40356-0000
                   PHONE: (334)000-0000
 ENTERED:  10/26/2005 ISSUED:  10/26/2005 TYPE:   CERTIFIED
 SERVED:              ANSWERED:         JUDGEMENT:
-----------------------------------------------------------------
 DEFENDANT  003: R.J. CORMAN COMPANY
                 ONE JAY STATION             ATTORNEY:

                 NICHOLASVILLE, KY  40356-0000
                   PHONE: (334)000-0000
 ENTERED:  10/26/2005 ISSUED:  10/26/2005 TYPE:   CERTIFIED
 SERVED:              ANSWERED:         JUDGEMENT:
-----------------------------------------------------------------
```

| Date | Action | |
|---|---|---|
| 10/25/2005 | COMPLAINT | |
| 10/26/2005 | ASSIGNED TO JUDGE: ASSIGNED JUDGE | (AV01) |
| 10/26/2005 | JURY TRIAL REQUESTED | (AV01) |
| 10/26/2005 | ORIGIN: INITIAL FILING | (AV01) |
| 10/26/2005 | CASE ASSIGNED STATUS OF: ACTIVE | (AV01) |
| 10/26/2005 | CSX TRANSPORTATION, INC. ADDED AS C001 | (AV02) |
| 10/26/2005 | LISTED AS ATTORNEY FOR C001: RICHARDSON MORRIS WA | |
| 10/26/2005 | R.J. CORMAN DERAILMENT SERVICES, L.L.C. ADDED AS D | |
| 10/26/2005 | CERTIFIED MAI ISSUED: 10/26/2005 TO D001 | (AV02) |
| 10/26/2005 | R.J. CORMAN RAILROAD GROUP ADDED AS D002 | (AV02) |

MAA   10/26/2005

CV 2005 000207.00

Ex 2

```
 AVS0351                                          CV 2005 000207.00

                                          JUDGE: ASSIGNED JUDGE
 ----------------------------------------------------------------
                    ALABAMA JUDICIAL DATA CENTER
                      CASE ACTION SUMMARY
                         CIRCUIT CIVIL
 ----------------------------------------------------------------
   IN THE CIRCUIT   COURT OF   MACON        COUNTY
 ----------------------------------------------------------------
   CSX TRANSPORTATION, INC.  VS  R.J. CORMAN DERAILMENT SERVICES,LLC ETAL
 FILED:  10/25/2005 TYPE: CONTRACT/EJMNT/SEIZU TYPE TRIAL: JURY    TRACK:
 ****************************************************************
 DATE1:              CA:                CA DATE:
 DATE2:              AMT:        $.00   PAYMENT:
 DATE3:
 ****************************************************************
   10/26/2005   CERTIFIED MAI ISSUED: 10/26/2005 TO D002   (AV02)

   10/26/2005   R.J. CORMAN COMPANY ADDED AS D003          (AV02)

   10/26/2005   CERTIFIED MAI ISSUED: 10/26/2005 TO D003   (AV02)
```

| | |
|---|---|
| 10/28/05 | Service Prefected on R. J. Corman Railroad Group |
| 10/28/05 | Service Prefected on R. J. Corman Derailment Service |
| 10/28/05 | Service Prefected on R. J. Corman Railroad Group / Tammie Taylor |
| 10/28/05 | Service Prefected on Kenneth Adams, Agent for R. J. Corman Derailment |
| 10/28/05 | Service Prefected on Kenneth Adams, Agent for R. J. Corman Co. |
| 10/28/05 | Service Prefected on R. J. Corman Company |

```
                    ... ... County Circuit Court
                   ... ... cer.    ... foregoing is a full, true
                   ... ...              ... erewith set out as came
                   ... ... ... ...

          Witness my hand this 18 day of NOV 2005

                   ... ...
              /s/ David ...
              Clerk Macon County Circuit Court
```

MAA   10/26/2005

CV 2005 000207.00

IN THE CIRCUIT COURT OF MACON COUNTY, ALABAMA

| | | |
|---|---|---|
| CSX TRANSPORTATION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | CV-05-207 |
| | ) | |
| R. J. CORMAN DERAILMENT | ) | |
| SERVICES, L.L.C., R. J. CORMAN | ) | |
| RAILROAD GROUP and R. J. CORMAN | ) | |
| COMPANY | ) | |
| | ) | |
| Defendants. | ) | Jury trial demanded |

## COMPLAINT

COMES NOW, the plaintiff, CSX Transportation, Inc., by and through its undersigned counsel and brings the following complaint against the defendants:

1.    CSX Transportation, Inc. ("CSX") is a corporation organized and existing under the laws of the Commonwealth of Virginia. CSX lawfully does business in Macon County, Alabama.

2.    Defendants are entities organized and existing under the laws of the State of Kentucky and doing business in Macon County, Alabama.

3.    CSX entered into a contract with R. J. Corman Company on or about December 1, 1994, by which R. J. Corman Company agreed to perform clean-up and repair services to CSX at derailment sites. The contract is attached to this Complaint as Exhibit A.

4.    Upon information and belief, R. J. Corman Railroad Group is the parent company or holding company of R. J. Corman Company and/or R. J. Corman Derailment Services, L.L.C. and, as such, is legally responsible for the acts, omissions and contractual obligations of R. J. Corman Company and/or R. J. Corman Derailment Services, L.L.C., their agents and employees. Further, upon information and belief, R. J. Corman Company is the parent company or holding company of

R. J. Corman Derailment Services, L.L.C. and, as such, is legally responsible for the acts, omissions and contractual obligations of R. J. Corman Derailment Services, L.L.C., its agents and employees

5.     On October 25, 2003, CSX's train derailed in or near the town of Shorter, Alabama in Macon County.  Pursuant to the contract with CSX, Defendants provided clean-up and repair services at the site of the Shorter derailment.  In the course of performing these services, Defendants wrongfully caused or contributed to cause a fire to develop in the area of the derailment.  This fire burned and otherwise damaged the real and personal property of CSX, the property which CSX was transporting and the property adjacent to the railroad tracks.

6.     CSX was sued by the owner of the property located adjacent to the railroad tracks at the site of the Shorter derailment for damage caused by Defendants in starting the fire or allowing the fire to start.  A copy of the Complaint is attached hereto as Exhibit B.  CSX has incurred attorney's fees, costs and expenses in defending this suit.

7.     CSX has incurred loss, damages, costs and expenses in repairing the damage to its own property, in repairing damage to the adjacent property and in compensating for damage to the property CSX was transporting, which was caused by the fire Defendants started or allowed to start. In addition, CSX has incurred and is continuing to incur attorneys' fees and expenses in defending a lawsuit arising out of the actions of Defendants.  Moreover, the value of CSX's property may have declined.

8.     The contract between CSX and Defendants provides as follows:

<u>ARTICLE VI. INDEMNITY</u>

6.1     Contractor will indemnify and hold harmless CSXT from and against all loss, damages, costs and expenses, including attorneys' fees, claims, demands and causes of action on account of: (a) injury to or death of all persons (including, but not limited to, employees of Contractor and CSXT), and loss of or damage to property (including, but not limited to, property of Contractor or CSXT) caused by or

2

resulting in any manner from any acts or omissions, negligent or otherwise, of Contractor of any of Contractor's subcontractors, agents or employees, in performing or failing to perform any of the Services on the part of Contractor to be performed under this Agreement, regardless of any fault, failure or negligence on the part of any other person including CSXT; (b) the issuance of any false or fraudulent receipts for any work by the Contractor or any of the Contractor's subcontractors, agents or employees; (c) theft, embezzlement or defalcation on the part of the Contractor or any of the Contractor's subcontractors, agents or employees; and (d) any liabilities arising out of a breach by Contractor of its representations and warranties set forth herein.

6.2    In the performance of Services hereunder, Contractor shall comply with all applicable federal and state laws and regulations with reference to Employer's Liability and Workmen's Compensation Insurance and shall indemnify and hold CSXT harmless from and against all loss, damage, costs and expenses, including attorneys' fees, claims, demands and causes of action of whatsoever nature, due to the violation of such laws or regulations by Contractor, or resulting from any claim of subrogation provided in such laws or regulations or otherwise.

6.3    Contractor shall comply strictly at all times with all other laws, rules, regulations, codes and ordinances, state, federal or municipal, applicable to Services to be performed hereunder, and Contractor expressly agrees to indemnify CSXT and hold it harmless from all liability for any failure or default on the part of Contractor as herein provided.

## Count I - Negligence

9.    CSX incorporates by reference and reasserts the allegations of paragraphs 1 through 8.

10.    Defendants' actions and work at the derailment site were negligent in that, and among other things, Defendants started fires or allowed fires to start at the derailment site causing damage to property. Defendants breached a duty to CSX, which breach proximately caused damage to CSX's real and personal property and the property of others for which CSX may be held liable.

3

Wherefore CSX demands judgment against Defendants in an amount deemed sufficient to compensate CSX for the damages described herein.

## Count II - Wantonness

11.     CSX incorporates by reference and reasserts the allegations of paragraphs 1 through 10.

12.     Defendants' actions and work at the derailment site were wanton in that, among other things, Defendants started fires or allowed fires to start at the derailment site causing damage to property. Defendants recklessly, willfully and wantonly breached a duty to CSX, which breach proximately caused damage to CSX's real and personal property and the property of others for which CSX may be held liable.

Wherefore CSX demands judgment against Defendants in an amount deemed sufficient not only to compensate CSX but also to punish Defendants for their reckless, willful and wanton conduct.

## Count III - Breach of Contract

13.     CSX incorporates by reference and reasserts the allegations of paragraphs 1 through 12.

14.     Under the contract attached as Exhibit A, Defendants agreed to provide trained personnel and to perform in a professional manner, using its best skill and judgment, clean-up and repair services for CSX at derailment sites in the best, safest and most expeditious and economical manner so as not to cause damage to CSX's property, to property being transported by CSX or to property adjacent to CSX railroad tracks. CSX performed in accordance with the contract. However, by acting negligently and/or wantonly in the performance of its work, including but not

limited to starting fires at the Shorter derailment site or allowing fires to develop, Defendants failed to perform in accordance with the contract.

15.    As a direct and proximate result of Defendants' failure to perform in accordance with the contract, CSX incurred damages, loss, costs and expenses in connection with damage to its own property, to the property CSX was transporting, to property adjacent to CSX's railroad tracks, and to the property of others for which CSX may be held liable and in connection with defending the lawsuit filed by the owner of the adjacent property. These damages, loss, costs and expenses were foreseeable and within the contemplation of the parties at the time the contract was executed.

Wherefore CSX demands judgment against Defendants in an amount deemed sufficient to compensate CSX for the damages described herein.

### Count IV - Breach of Warranty

16.    CSX incorporates by reference and reasserts the allegations of paragraphs 1 through 15.

17.    In Article V of the contract, Defendant made several express warranties to CSX regarding the manner by which it would perform the services provided in the contract, the equipment it would use in the performance of said services and the employees and agents that would perform the labor associated with Defendants' obligation under the contract.

18.    By acting negligently and wantonly in the performance of their work, including but not limited to starting fires at the Shorter derailment site or allow fires to develop, Defendants breached said warranties.

19.    As a direct and proximate result of Defendants' breach of warranties, CSX incurred damages, loss, costs and expenses in connection with damage to its own property, to the property CSX was transporting, to property adjacent to CSX's railroad tracks, and to the property of others

for which CSX may be held liable, and in connection with defending the lawsuit filed by the owner of the adjacent property.

Wherefore CSX demands judgment against Defendants in an amount deemed sufficient to compensate CSX for the damages described herein.

## Count V - Indemnity

20.     CSX incorporates by reference and reasserts the allegations of paragraphs 1 through 19.

21.     Pursuant to Article VI of the contract, Defendants are obligated to indemnify and hold harmless CSX against the damages, loss, costs and expenses, including attorneys' fees, claims, demands and causes of action brought against CSX arising from its actions at the Shorter derailment.

22.     By letters dated June 6, 2005, and September 28, 2005, directed to Ms. Mitzi A. Onskt of R. J. Corman Company, CSX gave notice to Defendants of its demand for indemnity under Article VI.  As of the date of this Complaint, Defendants have failed or refused to comply with Article VI.

Wherefore CSX demands judgment against Defendants in an amount deemed sufficient to indemnify and hold harmless CSX against its loss, damages, costs and expenses, including attorneys' fees, incurred in compensating for the damage to the property CSX was transporting and any property of others for which CSX may be held liable and incurred in defending the suit instituted against CSX arising out of the Shorter derailment, including satisfaction of any judgment entered against CSX in said suit or amounts paid in settlement of such suits.

## Count VI - Common Law Indemnity

23.     All or part of CSX's liability to the owners of the property adjacent to the railroad tracks at the site of the Shorter derailment and to the owners of the property CSX was transporting at the time of the Shorter derailment is purely passive, technical and constructive.

24.     The negligence, wantonness, breach of contract and breach of warranty of Defendants set forth in Counts I through IV of this Complaint are the active and efficient causes of any injury to the adjacent property and of any injury to the property being transported by CSX.

25.     Therefore, Defendants are liable to CSX under a theory of common law indemnification for the damages, loss, costs, and expenses, including attorneys' fees, incurred by CSX in defending the suit brought by the adjacent property owner, for satisfaction of any judgment should CSX be found liable to the adjacent property owner and for any damages, loss, costs, and expenses, including attorneys' fees, CSX has incurred or will incur in defending lawsuits or otherwise compensating the owners of the property CSX was transporting or other adjacent property owners.

Wherefore CSX demands judgment against Defendants in an amount deemed sufficient to indemnify and hold harmless CSX against its loss, damages, costs and expenses, including attorneys' fees, incurred in compensating for the damage to the property CSX was transporting and any property of others for which CSX may be held liable and incurred in defending the suit instituted against CSX arising out of the Shorter derailment, including satisfaction of any judgment entered against CSX in said suit or amounts paid in settlement of such suits.

**CSX demands trial by struck jury.**

7

*Elizabeth R. Floyd*

MORRIS WADE RICHARDSON
ELIZABETH R. FLOYD
Counsel for CSX Transportation, Inc.

Of Counsel:
ADAMS AND REESE/LANGE SIMPSON LLP
2100 3rd Avenue North, Suite 1100
Birmingham, Alabama 35203
Phone: (205) 250-5000

**Circuit clerk:**

Please the defendants by certified mail, return receipt requested at the following address:

R. J. Corman Railroad Group
Kenneth D. Adams, Registered Agent for Service of Process
One Jay Station
Nicholasville, KY 40356

R. J. Corman Company
Kenneth D. Adams, Registered Agent for Service of Process
One Jay Station
Nicholasville, KY 40356

R. J. Corman Derailment Services, L.L.C.
Kenneth D. Adams, Registered Agent for Service of Process
One Jay Station
Nicholasville, KY 40356

I, _____ D. Mellard, Clerk of Macon County Circuit Court
__ Alabama do hereby certify that the foregoing is a full, true
__ correct copy of the instrument(s) herewith set out as same
__ ___ of record in said Court.

_____ of this ___*18*___ day of ___*Nov.*___ *2005*

8



CSX
050679

## MASTER AGREEMENT FOR
## DERAILMENT CLEANUP AND REPAIR SERVICES

THIS AGREEMENT is made and entered into this 1st day of December, 1994, by and between CSX TRANSPORTATION, INC., a Virginia corporation, with principal business offices located at 500 Water Street, Jacksonville, Florida 32202, its subsidiaries and affiliates, (hereinafter called "CSXT") and R. J. CORMAN COMPANY, with business offices located at One Jay Station, Nicholasville, KY  40356, (hereinafter called "Contractor").

### WITNESSETH THAT:

WHEREAS, CSXT desires that Contractor provide general cleanup and repair services  on an as-needed, as-requested basis at the sites of derailments that might occur; and

WHEREAS, Contractor represents that it is a qualified, professional independent contractor and has the required expertise, trained personnel and equipment and is willing and able to provide such services in an efficient, prompt and lawful manner upon the terms and conditions hereinafter set forth,

NOW, THEREFORE, in consideration of the premises and of the benefits to each of the parties accruing, the parties mutually agree as follows:


### ARTICLE I.  SERVICES

1.1       From time to time during the Agreement, derailments may occur at various sites.  Upon the request of CSXT, Contractor will provide trained personnel and equipment and perform agreed

upon services as required to cleanup and repair the derailment site. The services that Contractor agrees to perform include the following, which are hereinafter jointly referred to as "Services": (a) clearing, removal and/or rerailing of locomotives and railcars involved in a derailment; (b) cleanup of right-of-way and any adjacent real property damaged as a result of the derailment; (c) removal and lawful disposal, as directed by CSXT, of debris and/or unsalvageable commodities involved in the derailment (Contractor understands that commodities moved may include hazardous and non-hazardous materials, substances and wastes, chemicals, gases and other commodities of a hazardous nature, the handling and disposal of which are subject to various federal, state and local environmental laws, regulations and permits; Contractor represents that it has the skill, knowledge and expertise to properly handle both hazardous and non-hazardous commodities and to dispose only of non-hazardous commodities, in a prompt, safe and lawful manner); (d) repair, rebuilding or replacement of any trackage, switches or turnouts damaged or destroyed in the derailment (CSXT will, unless otherwise agreed, furnish any of the foregoing items that are in need of replacement); and (e) such other services as requested by CSXT to complete the repair and cleanup of the derailment site. The scope of the Services to be performed by Contractor shall be determined at the time CSXT requests services, and as authorized by CSXT's designated representative, for a particular derailment site.

1.2      Contractor shall perform all Services in a professional manner, recognizing the relationship of trust and confidence with CSXT through this Agreement.  Contractor shall use its best skill and judgment and shall perform the Services in the best, safest, most expeditious and economical manner consistent with the requirements of this Agreement and the interests of CSXT.

1.3      Contractor shall provide these Services by responding to derailments as promptly as possible on an as-called, as-needed basis, twenty-four (24) hours per day, seven (7) days per week for the term of this Agreement or any renewal thereof.

1.4      Contractor shall at its own expense:  (a) furnish everything necessary, proper and incidental for the performance and completion of the Services, including all labor, supervision, materials, tools, equipment, utilities and services; (b) secure necessary licenses and permits required for the prosecution of the Services and provide any bond required by law in connection therewith; and (c) report and pay all taxes, including payroll, sales, use, excise and occupational taxes, applicable to materials and services furnished by Contractor.

## ARTICLE II.  CO-ORDINATION OF SERVICES

2.1      CSXT and Contractor shall each designate an individual to act as the primary contact to consent, approve, co-ordinate and otherwise act on behalf of the designating party for each derailment that CSXT requests Contractor to perform Services.  As a matter of information, such CSXT primary contact shall usually be a representative of CSXT's Mechanical Operations Department;

however, under certain circumstances, including, but not limited to, trackage, switch, turnout and signal repair, and disposition of hazardous or salvageable material, one or more secondary CSXT contacts representing other CSXT Departments may also be named by CSXT to co-ordinate that activity.

## ARTICLE III.  COMPENSATION

3.1     CSXT shall, throughout the term of this Agreement:  (a) pay Contractor, as compensation for the performance of Services, the fees specified in Contractor's Schedule of Fees and Charges, a copy of which is attached hereto as Exhibit "A"; (b) reimburse Contractor for reasonable and necessary travel expenses incurred by its employees for business travel at the request of CSXT in the performance of the Services, including reasonable transportation, meals and lodging; and (c) reimburse Contractor, at markup or administrative handling charges specified in Exhibit "A", for such rental equipment and subcontractor charges as are reasonable and necessary to perform the Services.

3.2     All invoices shall be submitted by Contractor upon completion of Services at a derailment and shall show any Outside Party Billing Number furnished by CSXT.  Such submissions shall set out adequate and complete details of Services rendered and business purposes of the expenses and charges incurred.  Each invoice shall, if requested by CSXT, be accompanied by a Derailment Reporting Form, an example of which is attached as Exhibit B.  Contractor shall be solely responsible for and shall report all payments received from CSXT and made to the

4

appropriate federal, state and local authorities for fees, licenses and assessments.

3.3      Contractor shall attach to each invoice all receipts for permits, lodging, meals, etc., that equal or exceed $200.00.

3.4      Contractor shall submit to CSXT's primary contact its invoices for Services relating to derailment cleanup and repair, and, when applicable, to CSXT's secondary contacts its invoices for Services co-ordinated by such representatives, as described in Article II.

## ARTICLE IV.  TERM

4.1      This Agreement shall commence on the date first above written and shall remain in effect on an indefinite basis, subject to termination by either party upon thirty (30) days written notice to the other party.

## ARTICLE V.  WARRANTIES

5.1      Contractor represents and warrants to CSXT, with the intention that CSXT rely thereon in entering this Agreement, that:  (a) the Services shall be performed in a safe and workmanlike fashion and manner and in conformity with industry standards, methods and practices, and any job briefing provided by CSXT, and (b) all Contractor furnished materials, if any, and equipment incorporated into the work shall be free from defects and fit for the use and purpose intended.  Contractor shall, at its expense, repair or replace any deficiency in the Services provided, where such deficiencies were within the control of the Contractor.  Contractor shall have a reasonable time to cure such deficiencies.

5.2      Contractor further represents and warrants to CSXT

5

that:  (a) Contractor has the capability, experience, registrations, licenses and means required to perform the Services, and that such Services shall be performed consistently with accepted professional practices, including professional practices for compliance with applicable and existing federal, state and local laws, regulations and ordinances, including, without limitation, the skilled support personnel provision in 20 CFR § 1910.120(q)(4) - Hazardous Waste Operations and Emergency Response; (b) no portion of any payment to Contractor by CSXT pursuant to this Agreement shall be used:  (i) as a bribe, kickback, rebate or illegal political contribution for the purpose of obtaining political influence, or (ii) in violation of applicable foreign exchange control regulations, tax laws or regulations, or other laws or regulations of any jurisdiction; (c) the execution and performance by Contractor of this Agreement does not and shall not violate, conflict with or result in a breach of:  (i) any of the terms, conditions, duties or obligations to which Contractor is bound to any third party, or (ii) any other rights of any third party; and (d) Contractor and its affiliated companies are properly registered and licensed to perform the Services described in this Agreement.

## ARTICLE VI.  INDEMNITY

6.1    Contractor will indemnify and hold harmless CSXT from and against all loss, damages, costs and expenses, including attorneys' fees, claims, demands and causes of action on account of:  (a) injury to or death of all persons (including, but not limited to, employees of Contractor and CSXT), and loss of or damage to property (including, but not limited to, property of

6

Contractor and CSXT) caused by or resulting in any manner from any acts or omissions, negligent or otherwise, of Contractor or any of Contractor's subcontractors, agents or employees, in performing or failing to perform any of the Services on the part of Contractor to be performed under this Agreement, regardless of any fault, failure or negligence on the part of any other person including CSXT; (b) the issuance of any false or fraudulent receipts for any work by the Contractor or any of the Contractor's subcontractors, agents or employees; (c) theft, embezzlement or defalcation on the part of the Contractor or any of the Contractor's subcontractors, agents or employees; and (d) any liabilities arising out of a breach by Contractor of its representations and warranties set forth herein.

6.2    In the performance of Services hereunder, Contractor shall comply with all applicable federal and state laws and regulations with reference to Employer's Liability and Workmen's Compensation Insurance and shall indemnify and hold CSXT harmless from and against all loss, damage, costs and expenses, including attorneys' fees, claims, demands and causes of action of whatsoever nature, due to the violation of such laws or regulations by Contractor, or resulting from any claim of subrogation provided in such laws or regulations or otherwise.

6.3    Contractor shall comply strictly at all times with all other laws, rules, regulations, codes and ordinances, state, federal or municipal, applicable to Services to be performed hereunder, and Contractor expressly agrees to indemnify CSXT and hold it harmless from all liability for any failure or default on the part of Contractor as herein provided.

7

## ARTICLE VII.   INSURANCE

7.1     During the term of this Agreement, Contractor shall procure and maintain at its sole expense the following insurance coverages:

(a)   Commercial General Liability Insurance, naming Contractor as insured and CSXT as additional insured, including coverage for liability assumed by Contractor under this Agreement with a combined single limit of not less than five million dollars ($5,000,000) for bodily injury and property damage per occurrence.

(b)   Workers' Compensation and Employers' Liability Insurance to cover the statutory requirements of any states in which Services are to be performed under this Agreement.  The policy shall include an endorsement waiving subrogation against CSXT.

(c)   Automobile Liability Insurance with combined single limits of not less than one million dollars ($1,000,000) for bodily injury and property damage per occurrence.

7.2     Evidence of the above insurance shall be provided to and approved by CSXT's Director Casualty Insurance (J-907), CSX Transportation, Inc., 500 Water Street, Jacksonville, Florida32202, as a condition precedent to the performance of Services under this Agreement.  Such insurance shall contain a notification provision whereby the insurance company agrees to give thirty (30) days' written notice to CSXT of any change or cancellation of the policies.  These endorsements and notice provisions shall be stated on the certificate of insurance which shall be provided to CSXT.

7.3     Contractor shall cause each subcontractor, if any, under a subcontract let by Contractor that is authorized by CSXT, to carry insurance equivalent to subarticle 7.1 covering such subcontractors's work.

7.4     The consent of CSXT to the insurance and limits insured, as shown in this Article VII, shall not be considered as a limitation of Contractor's liability under this Agreement, nor an agreement by CSXT to assume liability in excess of said amounts or for risks not insured against.

### ARTICLE VIII.   COMPLIANCE WITH LAWS

8.1     Contractor and its subcontractors shall comply with applicable laws (including, but not limited to, the Occupational Safety and Health Act of 1970), ordinances, rules, regulations, codes and orders of the United States, any state, county or any executive or administrative agency thereof and any other governmental body having any jurisdiction over the Services and with the safety rules and regulations of CSXT in force at the derailment site.

8.2     All ordinary personal safety items, protective clothing and equipment shall be provided by the Contractor to its employees, agents and subcontractors at no expense to CSXT.

### ARTICLE IX.   COMPLIANCE WITH SAFETY POLICY

9.1     Contractor agrees to comply with the Safety Policy of CSXT by:  (a) having its officials and supervisors view, prior to the initiation of any Services, the video "CSXT Safety Policy for Outside Contractors", and assuring that its employees, agents and subcontractors comply with CSXT safety rules, instructions and requirements; (b) having its employees, agents and subcontractors

9

attend job briefings conducted by CSXT at the derailment site; (c) conducting a safety and job briefing before the initiation of work each day at the derailment site, in the absence of such briefing by CSXT; and (d) assuring that its employees, agents and subcontractors wear hard hats, safety glasses with side shields, steel toed shoes and all other appropriate safety wear at all times at the derailment site.

## ARTICLE X.    CONTINUANCE OF SERVICES

10.1      If any dispute shall arise during the performance of Services, Contractor shall, unless otherwise directed by CSXT, continue to perform such Services pending resolution of such dispute, unless Contractor reasonably believes that such continuation would be unlawful or unsafe.

## ARTICLE XI.    LIMITATION OF AREAS OCCUPIED FOR SERVICES

11.1      Contractor shall restrict its presence and that of its agents, employees or subcontractors to the area of the derailment (including storage and parking areas and areas of access to and from the derailment site), all as directed by CSXT.

## ARTICLE XII.    NONINTERFERENCE WITH CSXT OPERATIONS

12.1      Contractor's Services shall be performed in such a manner as not to interfere with the railroad or facility operations and Contractor shall take all action necessary or requested by CSXT to effect the purposes of this Article.

12.2      In the event it is necessary for Contractor to work on or near CSXT's right-of-way and to build temporary roads, lay timbers to cross railroad tracks, remove any ballast to lay pipe or hoses under the track, or in any other way change the track or roadbed structure, Contractor will do so only after consultation

10

with and in accordance with any requirements of CSXT. Contractor agrees to restore the roadbed and surrounding area to the condition specified by CSXT.

12.3    Contractor further agrees that no Services will be performed by it, its employees, agents or subcontractors within fifteen (15) feet of operating track without the prior permission of CSXT. Such Services shall be performed only in accordance with any requirements of CSXT.

### ARTICLE XIII.  NON-WAIVER

13.1    No course of dealing between the parties hereto nor any failure by CSXT at any time, or from time to time, to enforce any term or condition of this Agreement shall constitute a waiver of such term or condition, nor shall such course of dealing or failure affect such term or condition in any way or the right of CSXT at any time to avail itself of such remedies as it may have for any breach of such term or condition.

### ARTICLE XIV.  ASSIGNMENT AND SUBCONTRACTING

14.1    Contractor shall not assign this Agreement or any Services, or subcontract any of such Services hereunder without the prior consent of CSXT. The consent of CSXT to any such assignment or subcontracting shall not relieve Contractor of the complete responsibility for the performance of Services or other obligations in accordance with the terms and conditions of this Agreement, and Contractor shall remain liable to CSXT as if no such assignment or subcontract had been made.

### ARTICLE XV.  LIENS

15.1    Contractor shall discharge at once all liens, if any, which may be filed in connection with Services performed under

11

this Agreement and shall defend and hold CSXT free and harmless therefrom.   Prior to final payment for Services performed at any derailment site, Contractor shall furnish to CSXT written releases and lien waivers for all labor, materials or equipment used in performance of the Services.

## ARTICLE XVI.   FINAL CLEANUP

16.1      At the conclusion of the performance of Services at each derailment site, Contractor shall remove all debris and unexpended supplies, equipment, and unused consumable or non-consumable materials and leave the derailment site in a neat and clean condition, all to the satisfaction of CSXT.

## ARTICLE XVII.   OTHER CONTRACTORS

17.1      CSXT reserves the right to engage other contractors for work to be performed contemporaneously with Contractor's Services whether or not such other work is related to the Services. Contractor agrees to fully cooperate with such other contractors, if any, in properly coordinating its Services with theirs.

17.2      Contractor understands that CSXT may, on occasion and in compliance with existing union agreements, assign CSXT personnel to work directly in conjunction with Contractor or perform other work at a derailment site.

17.3      The decision of CSXT with respect to all matters of coordination with other contractors and/or other CSXT workers shall be final and binding upon Contractor.

## ARTICLE XVIII.   INSPECTION

18.1      CSXT may conduct inspections of the Services performed by Contractor as it deems desirable to ensure that the Services are being performed in accordance with this Agreement.   If such

12

inspections indicate that the Services are not being properly performed, Contractor shall at its sole cost and expense remedy the deficiencies therein.  Nothing herein shall be construed or interpreted to mean that any inspection or approval given by CSXT shall relieve Contractor from its obligations under this Agreement.

## ARTICLE XIX.  INDEPENDENT CONTRACTOR

19.1    Contractor shall act solely as an independent contractor in performing its Services, and nothing in this Agreement shall at any time be construed to create the relationship of employer and employee, partnership or joint venture between CSXT and Contractor, or any of their officers, directors, employees, agents or subcontractors.  Contractor and its employees shall have no right or authority, and shall not attempt to enter into any contract, commitment or agreement, make any representations, or incur any debt or liability, of any nature, in the name of or on behalf of CSXT.

## ARTICLE XX.  CONFIDENTIALITY

20.1    Neither party shall disclose the provisions of this Agreement to any other party (excluding parent, affiliate or subsidiary companies) without the prior written consent of the other party, except as otherwise required by law.

## ARTICLE XXI.  SEVERABILITY

21.1    If any of the terms and conditions of this Agreement shall be finally determined to be invalid or unenforceable in whole or part, the remaining provisions hereof shall remain in full force and effect, and be binding upon the parties hereto. The parties agree to reform this Agreement to replace any such

13

invalid or unenforceable provision with a valid and enforceable provision that comes as close as possible to the intention of the stricken provision.

## ARTICLE XXII.  SURVIVAL

22.1     The terms and conditions of Articles numbered five (V) and six (VI) shall survive the completion of the Services performed under this Agreement and the termination of this Agreement.

## ARTICLE XXIII.  BINDING EFFECT

23.1     This Agreement shall be binding upon and shall enure to the benefit of the parties, their successors, heirs, representatives and assigns.

## ARTICLE XXIV.  ENTIRE AGREEMENT AND AMENDMENTS

24.1     No change, modification of or addition to this Agreement shall be effective unless in writing and signed by both parties.  This Agreement constitutes the entire understanding between the parties with respect to the Services and supersedes any prior negotiations, understandings and agreements, written or oral, with respect to the Services.

## ARTICLE XXV.  NO THIRD PARTY RIGHTS

25.1     This Agreement shall not create any rights or benefits to parties other than CSXT and Contractor.

## ARTICLE XXVI.  GIFTS AND CONFLICT OF INTEREST

26.1     Contractor represents that it has not and will not exchange any gift, rebate, influence or other compensation (excluding nominal business entertainment or gifts) with any official, employee, representative or agent of CSXT or any of its parent, affiliate or subsidiary companies.

14

26.2    Contractor further represents that none of its officials or employees is employed by CSXT or any of its parent, affiliate or subsidiary companies.  Contractor agrees to immediately notify CSXT if Contractor becomes aware of changes in the foregoing representations.

26.3    Contractor understands that CSXT has the right to rely upon the foregoing representations and that failure to honor these representations may result in a default of this Agreement.

## ARTICLE XXVII.  AUDIT

27.1    Contractor agrees that CSXT, through its employees or authorized representatives, may audit Contractor's facilities and its records during normal business hours to verify Contractor's compliance with this Agreement.  Contractor further agrees that, for at least a three (3) year period computed from the end of the first calendar year following the date of such record, it will retain, without limitation, the following records:  (a) payroll and/or accounting records, including social security numbers and labor classifications, time sheets, cancelled checks or signed cash receipts of employees or agents performing Services pursuant to this Agreement; (b) invoices or inventory records for materials used in Contractor's performance of Services; (c) all documents regarding any Services performed by a subcontractor or agent; and (d) all documents in Contractor's possession regarding its compliance with this Agreement.

## ARTICLE XXVIII.  SALES AND USE TAX

28.1    Contractor agrees to recognize the statutory exemptions and direct payment permits listed in Exhibit C, where appropriate, in lieu of otherwise applicable sales and use tax.

15

## ARTICLE XXIX.  NOTICES

29.1    All notices pertaining to this Agreement and Certificates of Insurance shall be mailed to the following addresses:

> To CSXT:
>
> (Notices pertaining to this Agreement)
> W. J. Dusack
> Manager-Contract Services
> CSX Transportation, Inc.
> 500 Water Street, J-345
> Jacksonville, Florida  32202
>
> (Certificates of Insurance)
> R. L. White
> Director-Casualty Insurance
> CSX Transportation, Inc.
> 500 Water Street, J-907
> Jacksonville, Florida  32202
>
> To Contractor:
> (Notices pertaining to this Agreement)
> Ms. Mitzi A. Onkst
> Accounts Receivable Manager
> R. J. Corman Company
> One Jay Station
> Nicholasville, KY  40356

29.2    Each party shall have the right to change its Notify Party upon ten (10) days' written notice to the other.  Every notice given or required to be given under this Agreement shall be in writing, and shall be deemed effective when delivered by hand or when mailed by first class mail, postage prepaid, to the designated Notify Party.

## ARTICLE XXX.  SUBSTITUTION, SUSPENSION AND TERMINATION OF SERVICES

30.1    If Contractor is unable to perform Services for any reason, CSXT may, upon immediate notice, substitute another party to perform those Services.  If it elects to make such substitution, CSXT agrees, upon receipt of proof of performance

16

and Contractor's invoice, to pay Contractor for Services performed up to the time of such substitution.

30.2     Either CSXT or Contractor may suspend this Agreement or any Services at any time and upon written notice if performance of its contractual obligations is inconsistent with any labor claims, arbitration award or court decision.

30.3     If it makes a determination that Contractor is not in compliance with the provisions of this Agreement, CSXT shall notify Contractor in writing and specify such deficiencies. If Contractor has not corrected such deficiencies to CSXT's reasonable satisfaction within 10 days of the date of CSXT's notice, CSXT may terminate the Agreement and/or relieve Contractor of its duties upon immediate notice. Such action shall in no way limit any remedy CSXT may have at law or in equity.

30.4     CSXT may, without the consent or fault of Contractor, terminate the Services for the convenience of CSXT at any time upon notice to Contractor. Contractor shall, upon such early termination by CSXT, be paid all compensation earned to date of termination of the Services. In no event, however, shall Contractor be entitled to any prospective profits or reimbursement of prospective overhead general expenses, administrative expenses or damages (consequential or otherwise) because of such early termination.

### ARTICLE XXXI.   EQUAL EMPLOYMENT OPPORTUNITY

31.1     CSXT policy provides equal opportunities in employment without regard to race, color, religion, sex, age or national origin and is committed to employing and advancing qualified

disabled veterans, handicapped persons and Vietnam era veterans. CSXT further complies with the requirements placed on government contractors and subcontractors by Executive Order 11246, Section 402 of the Vietnam Era Veterans Readjustment Assistance Act of 1974 and Section 503 of the Rehabilitation Act of 1973. Contractor hereby agrees that it shall also comply with these same Executive Orders, laws, rules and regulations as applicable.

## ARTICLE XXXII.  APPLICABLE LAW

32.1    This Agreement shall be deemed to be made under and construed in accordance with the laws of the State of Florida.

IN WITNESS WHEREOF, the parties have executed this Agreement to be effective as of the date first above written.


R. J. CORMAN COMPANY                    CSX TRANSPORTATION, INC.

By: _____            By: _____

Name:    R. J. Corman                   Name:    C. A. McNaughton

Title:   President                      Title: Assistant Vice President

Date: _____11-8-94_____               Date: ____12/20/94_____


[10/11/94]

v:\staff\jso\mastrag2.ckm



# RJ CORMAN COMPANIES

## CORPORATE OFFICES

One Jay Station
P.O. Box 788
Nicholasville, Ky 40356
(606)885-9457



August 8, 1994

Mr. Dale Burmeister
CSX Transportation, Inc.
550 Water St., 13th Floor
Jacksonville, FL 32232

Dear Mr. Burmeister:

The following information provided within this letter along with the attached Schedules A, B
(Part 1 and Part 2), and C (Part 1 and Part 2) and Maps (Gary, IN; Columbus, OH; and
Nicholasville, KY) comprise R. J. Corman's proposal for emergency wreck service to CSX
Transportation, Inc. over the next 3 years and 5 months, ending December 31, 1997.

- The discount schedule will be as follows (based on the calendar year):

4% discount after $1 million of derailment services rendered
each year,
6% discount after $1.5 million,
8% discount after $2 million,
10% discount after $2.5 million, and
12% discount after $3 million.

Based on your year-to-date derailment billings for 1994, as of today, CSXT has
done $900,833.44 of business with R. J. Corman. CSXT will begin receiving
the above discounts on the current price list (see Schedule A) after only
$99,166.56 more of emergency wreck services provided by R. J. Corman.
Beginning Jan. 1, 1995, we will switch to the new price list (see Schedule B)
and apply the same discount schedule.

**R.J.Corman Railroad Construction**

| | |
|---|---|
| My Old Kentucky Dinner Train | R.J.Corman Railroad Company/Memphis Line |
| R.J.Corman Distribution Center | R.J.Corman Railroad Company/Cleveland Line |
| R.J.Corman Railroad Corporation/Bardstown Line | R.J.Corman Railroad Company/Western Ohio Line |

- Labor charges will be rounded to the nearest 1/2 hour.

- In the event that R. J. Corman moves directly from one wreck to another without returning to its "base" location, no moveback is charged to the first CSXT emergency job; move-in is charged to the second CSXT job beginning when the division leaves the site of the first job. (The maximum ETA's which we have provided via the CSXT maps should insure CSXT that no unreasonable move-in will be billed.)

- Overtime will begin at 4:00 p.m. EST.

- R. J. Corman Railroad Construction Company agrees to furnish receipts or copies of receipts on any permits or lodging expenses in excess of $200.00 each.

- If a piece of equipment were to be released before the package as a whole is released, or should a piece of equipment become disabled, the unit will be shown on the billing as a deduction from the package rate for the appropriate hours.

- There will be no "riding" rate for travel time. Our rates were developed bearing in mind that the equipment is not running while being traveled, and that the tractor/trailers are not running while the equipment is working.

- We will use the meal cost plus percentage mark-up method when billing CSXT for the cost of meals necessary during wreck clean-up. We feel that this method is more fair to CSXT considering our history rather than proposing a per diem rate.

- As of today, CSXT will be serviced by derailment divisions in Gary, Indiana; Columbus, Ohio; and Nicholasville, Kentucky. Wreck service centers may be added in the future. R. J. Corman will inform CSXT as soon as possible.

- R. J. Corman is willing to "lock in" the Schedule B rates for CSXT until December 31, 1997. (Note that Schedule B includes both package rates and the rates for individual units of equipment and personnel.)

- See Schedule C for equipment lists.

- No minimum fees will apply. CSXT will be billed only while R. J. Corman is "on the clock" (real time) for CSXT.

- Payment terms will be Net 30 Days.

R.J. Corman Railroad Construction

My Old Kentucky Dinner Train
R.J. Corman Distribution Center
R.J. Corman Railroad Corporation/Bardstown Line

R.J. Corman Railroad Company/Memphis Line
R.J. Corman Railroad Company/Cleveland Line
R.J. Corman Railroad Company/Western Ohio Line

I believe I have included all the major points which we discussed in our meetings in Jacksonville. If I have overlooked any such points, please call me at (606) 885-9457, Ext. 227 as soon as possible so that I may include them. Thank you for your many hours spent in consideration of the R. J. Corman Railroad Company.

Very truly yours,

Mitzi A. Onkst
Accounts Receivable Manager

R.J. Corman Railroad Construction

My Old Kentucky Dinner Train
R.J. Corman Distribution Center
R.J. Corman Railroad Corporation/Bardstown Line

R.J. Corman Railroad Company/Memphis Line
R.J. Corman Railroad Company/Cleveland Line
R.J. Corman Railroad Company/Western Ohio Line

EXHIBIT B

## IN THE CIRCUIT COURT FOR MACON COUNTY, ALABAMA

| | | |
|---|---|---|
| Robert L. Cheek, III | * | |
| | * | |
| **Plaintiff,** | * | |
| vs. | * | Civil Action No. |
| | * | |
| CSX Transportation, Inc.; Ronnie | * | CV- 2004- 163 |
| Dansby; and Fictitious Defendants A | * | |
| through J, who are those persons, | * | JURY DEMAND REQUESTED |
| corporations, partnerships or entities | * | |
| who acted as principle or agent for or | * | |
| in concert with the other named | * | |
| Defendants and/or whose acts caused | * | |
| or contributed to the damages by the | * | |
| Plaintiff, whose identities are unknown | * | |
| to Plaintiff, but which will be | * | |
| substituted by amendment when | * | |
| ascertained, | * | |
| | * | |
| **Defendant.** | * | |

## COMPLAINT

### Statement of The Parties

1.    Plaintiff, Robert L. Cheek, III is an individual residing in Macon County, Alabama.

2.    The Defendant, CSX Transportation, Inc. is a foreign corporation, incorporated in Virginia and licensed to do business in the State of Alabama.

3.    Upon information and belief, Defendant Ronnie Dansby is over the age of nineteen (19) years and a resident of Lowndes County, Alabama.

4.    The fictitious Defendants A through J are those persons, corporations, partnerships or entities, who acted either as principle or agent for or in concert with the other named Defendants and/or whose acts caused or contributed to the damages

sustained by the Plaintiff, whose identities are unknown to Plaintiff, but which will be substituted by amendment when ascertained.

## Statement of The Facts

5.    On October 25, 2003, a CSX Transportation, Inc. train derailed in Shorter, Alabama. Upon information and belief, this train was number Q61824.

6.    The derailment occurred on the train tracks adjacent to Robert L. Cheek, III's (hereinafter referred to as Cheek) property.

7.    Multiple railcars left the track and ended up on the Cheek property.

8.    Upon information and belief, Ronnie Dansby was the train's engineer.

9.    Prior to the derailment, sparks coming off the train sparked brush fires adjacent to the tracks for several miles before the train finally crashed on the Cheek property.

10.    The derailment caused a carload of vinyl acetate to explode and burn.

11.    In addition to the vinyl acetate car fire, multiple cars of new crossties caught fire and burned on the Cheek property.

12.    On impact, one or more carloads of methyl ethyl ketone (MEK) spilled onto the Cheek property.

13    The Cheek property directly adjacent to the train tracks is predominantly a wetland area.

14.    As a result of the derailment, fires burned on or adjacent to the Cheek property for more than a day. In addition to the vinyl acetate and MEK cars, there were also multiple carloads of ammonium nitrate fertilizer, a car of copper wire and multiple

cars of sulphuric acid residue, crossties, paper and/or pressboard that derailed on or around the Cheek property.

15.     As a result of the derailment and subsequent explosion, the Cheek house, located less than .4 miles from the site, was shaken violently, resulting in flooding from damage to pipes.

16.     CSX hired an environmental company to test the surface water, soil and sediment at the Cheek property.   Those test results showed methyl ethyl ketone contamination on the Cheek property.

17.     CSX and/or its agents or servants attempted remediation activities on the Cheek property, including installing an aeration system in the wetland to try to remove the MEK.

18.     The aeration system worked by pumping air through a large network of hoses and PVC pipes sunk far out into the water on the Cheek property.

19.     When the air pump was removed and aeration discontinued, all hose and PVC pipes were left on the Cheek property.

20.     Upon information and belief, car numbers 53 through 77, inclusive, derailed during the incident.

## Count I
### (Trespass By Invasion)

21.     Plaintiff realleges the above paragraphs of the Complaint as if set out herein in full.

22.     Plaintiff is the owner of that piece of real property located on the South side of the railroad track in question and extending to the North side of Interstate 85.

23.     The Cheek property encompasses approximately 220 acres.

24.    On October 25, 2003, Defendants caused an invasion onto Plaintiff's property of chemicals and foreign substances, including but not limited to MEK and vinyl acetate.

25.    This invasion disturbed and continues to disturb the Plaintiff's possession of his real property, thereby constituting a trespass.

26.    Defendants intentionally, recklessly or wantonly conducted and/or drove the train as to result in the derailment and trespass.

27.    Defendants negligently and/or wantonly maintained and/or inspected the railroad track as to result in the derailment.

28.    Defendants negligently and/or wantonly maintained and/or inspected the train as to result in the derailment.

29.    It was reasonably foreseeable that the derailment would result in an invasion of chemicals and other substances onto Plaintiff's property.

30.    At all times, material hereto the train and track in question were both under the control of Defendant CSX.

31.    Plaintiff's property, both real and personal, has been damaged by Defendant's trespass and invasion.

32.    Plaintiff's property had and continues to have chemical contamination. Plaintiff's property suffered fire damage.  Plaintiff suffered a massive fish kill on his property due to Defendant's chemical invasion.

WHEREFORE, PREMISES CONSIDERED, Plaintiff claims compensatory and punitive damages against Defendants to the fullest extent allowed by law.

4

## Count II
### (Trespass to Real Property)

33.    Plaintiff realleges the above paragraphs of the Complaint as if set out herein in full.

34.    After the derailment, Plaintiff allowed Defendants to set up an aeration system in an effort to try and remove the chemical contamination from the surface water on Plaintiff's property.

35.    The system consisted of approximately 2,500 feet of ¾ inch PVC pipe with holes drilled in it, set up in a 10 foot by 10 foot and/or 20 foot by 20 foot grid submerged throughout Plaintiff's wetland.

36.    An air compressor located on the North side of the track pumped air to the pipes through a series of long hoses.

37.    This aeration continued for no more than a few weeks after the derailment. Then Defendant removed the air compressor.

38.    Despite removing the air compressor, Defendants left behind all the hoses and submerged piping and have yet to remove that material.

39.    Plaintiff never agreed to allow Defendants to permanently leave all of the aeration equipment littering his property.

40.    The aeration equipment is no longer being used to remove contamination and is therefore no longer serving the purpose for which it was originally allowed onto the property.

41.    Defendants have intentionally and continuously committed trespass on Plaintiff's property by leaving the non-functioning aeration equipment littering his property without Plaintiff's consent.

5

42.    Defendants' trespass is a direct and proximate cause of injuries and damages to Plaintiff.

WHEREFORE, PREMISES CONSIDERED, Plaintiff claims compensatory and punitive damages against Defendants to the fullest extent allowed by law.

### Count III
### (Nuisance)

43.    Plaintiff realleges the above paragraphs of the Complaint as if set out herein in full.

44.    Defendants caused foreign chemical substances to contaminate Plaintiff's property.  The contamination resulted to both his soil and water.

45.    These foreign chemical substances were introduced onto Plaintiff's property on October 25, 2003, and continued to contaminate Plaintiff's property.

46.    These chemicals constitute a nuisance on Plaintiff's property.

47.    Defendants are liable to Plaintiff for callously, intentionally, wrongfully and illegally creating a nuisance to Plaintiff's right to the use and enjoyment of his property, thereby damaging the Plaintiff in his real and personal property.

48.    Plaintiff has lost the use and enjoyment of his property due to Defendant's actions.  Defendants' actions are the direct and proximate cause of Plaintiff's injuries and damages.

WHEREFORE, PREMISES CONSIDERED, Plaintiff claims compensatory and punitive damages against Defendants to the fullest extent allowed by law.

**Count IV**
**(Trespass)**

49.     Plaintiff realleges the above paragraphs of the Complaint as if set out herein in full.

50.     A number of cars carrying new railroad crossties derailed during the October 25, 2003 accident.

51.     During the crash and/or the cleanup process, multiple carloads of crossties caught fire and burned for at least a day.

52.     The debris of burned and partially burned crossties was piled up by Defendants and/or their agents and/or servants and left on the Cheek property.

53.     The pile of crossties is still on the Cheek property.

54.     That large pile of burnt crossties constitutes a trespass to the Cheek property.

55.     Plaintiff's property has been and continues to be damaged due to this crosstie debris.

56.     During the incident, over two dozen cars derailed, and a portion of the train track was destroyed or severely damaged.

57.     At least one railcar exploded and several others burned.

58.     Multiple cars were strewn on the Cheek property as a result of the wreck.

59.     After the Defendants removed their railcars and replaced the length of track, a great deal of debris remained at the derailment site.

60.     Large parts of the railcars and portions of track were left on the Cheek property after the Defendants completed their cleanup and recovery efforts.

61.     That debris constitutes a trespass on the Cheek property.

7

62.    Plaintiff has been damaged as a result of that debris.

63.    Defendants' trespass is a direct and proximate cause of injuries and damages to Plaintiff.

WHEREFORE, PREMISES CONSIDERED, Plaintiff claims compensatory and punitive damages against Defendants to the fullest extent allowed by law.

## Count V
## (Negligent Operation of Train)

64.    Plaintiff realleges the above paragraphs of the Complaint as if set out herein in full.

65.    Defendants negligently operated train number Q61824 so as to cause its cars to leave the train track and derail onto Plaintiff's property.

66.    Defendants owed a duty to Plaintiff to exercise reasonable and ordinary care in operating the train.

67.    Defendants breached that duty by crashing and derailing that train and its cars onto Plaintiff's property.

68.    Defendants' negligent operation of the train caused entire carloads of chemicals and other foreign matters to spill out onto Plaintiff's property.

69.    Defendants' negligence caused an explosion of a railcar load of vinyl acetate, violently shaking Plaintiff's home and causing pipe breakage and water damage.

70.    Defendants' negligence caused a fire and/or multiple fires to start on Plaintiff's property and to burn for an extended time.

71.    Defendants' negligent operation of his train caused multiple cars to derail, leaving various forms of debris spread across Plaintiff's property.

72.     Plaintiff has sustained damage to both real and personal property due to Defendant's negligence.  Plaintiff has been and continues to be damaged by Defendant's negligence.

WHEREFORE, PREMISES CONSIDERED, Plaintiff claims compensatory and punitive damages against Defendants to the fullest extent allowed by law.

## Count VI
### (Wanton Operation of the Train)

73.     Plaintiff realleges the above paragraphs of the Complaint as if set out herein in full.

74.     The Defendants intentionally, recklessly and/or without regard to the consequences operated the train so as to cause its cars to leave the track and derail onto Plaintiff's property.

75.     Defendants' wantonness was the direct and proximate cause of the Plaintiff's damages.

WHEREFORE, PREMISES CONSIDERED, Plaintiff claims compensatory and punitive damages against Defendants to the fullest extent allowed by law.

## Count VII
### (Negligent Maintenance of the Train)

76.     Plaintiff realleges the above paragraphs of the Complaint as if set out herein in full.

77.     The Defendants negligently maintained the train as to cause it to derail and leave the tracks.

9

78.    Upon information and belief, the train began experiencing serious problems miles before the Cheek property as evidenced in sparks shooting off the train and sparking brush fires miles before the train reached the Cheek property and derailed.

79.    Defendants failed to exercise reasonable and ordinary care in the maintenance of the train.

80.    Defendants' negligent maintenance resulted in the derailment and damages.

WHEREFORE, PREMISES CONSIDERED, Plaintiff claims compensatory and punitive damages against Defendants to the fullest extent allowed by law.

### Count VIII
### (Wanton Maintenance of the Track)

81.    Plaintiff realleges the above paragraphs of the Complaint as if set out herein in full.

82.    Defendants intentionally, recklessly and/or without regard to the consequences maintained the train so as to cause its cars to leave the track and derail onto Plaintiff's property.

83.    Defendants' wantonness was the direct and proximate cause of the Plaintiff's damages.

WHEREFORE, PREMISES CONSIDERED, Plaintiff claims compensatory and punitive damages against Defendants to the fullest extent allowed by law.

## Count IX
### (Negligent Maintenance of Track)

84.    Plaintiff realleges the above paragraphs of the Complaint as if set out herein in full.

85.    The Defendants own and/or their agents and/or servants are responsible for that portion of railroad track leading from Montgomery, Alabama, and passing by Plaintiff's property in Shorter, Alabama.

86.    Defendants failed to exercise reasonable and/or ordinary care in the maintenance of that track.

87.    Defendants' breach of duty and failure to exercise reasonable and due care caused the train to derail thereby damaging Plaintiff.

WHEREFORE, PREMISES CONSIDERED, Plaintiff claims compensatory and punitive damages against Defendants to the fullest extent allowed by law.

## Count X
### (Wanton Maintenance of the Tracks)

88.    Plaintiff realleges the above paragraphs of the Complaint as if set out herein in full.

89.    The Defendants intentionally, recklessly and/or without regard to the consequences maintained the train track so as to cause the train to derail.

90.    Defendants' wantonness was the direct and proximate cause of the Plaintiff's damages.

WHEREFORE, PREMISES CONSIDERED, Plaintiff claims compensatory and punitive damages against Defendants to the fullest extent allowed by law.

## Count XI
### (Negligent Hiring, Training and Supervision)

91.    Plaintiff realleges the above paragraphs of the Complaint as if set out herein in full.

92.    Defendant CSX Transportation, Inc., negligently hired and/or supervised its employees, agents and/or servants, who operated the train, who maintained and inspected the track and who maintained and inspected the train.

93.    Defendant CSX knew or should have known that these employees, agents and/or servants were not properly discharging their duties, had not been properly trained to perform their duties, and were not properly supervised during the performance of their duties.

94.    As a result of Defendant CSX Transportation's negligent hiring, training and supervision, Defendant's train derailed, damaging Plaintiff.

WHEREFORE, PREMISES CONSIDERED, Plaintiff claims compensatory and punitive damages against Defendants to the fullest extent allowed by law.

## Count XII
### (Wanton Hiring, Training and Supervision)

95.    Plaintiff realleges the above paragraphs of the Complaint as if set out herein in full.

96.    Defendant CSX Transportation intentionally, recklessly and/or without regard to the consequences hired, trained and/or supervised its employees, agents and/or servants who operated the train, who maintained and inspected the track or who maintained and/or inspected the train.

97.    Defendant CSX Transportation intentionally, recklessly and/or without regard to the consequences allowed their servants to improperly discharge their duties, failed to properly train their servants and/or agents and/or employees, failed to properly supervise their servants, agents and/or employees.

98.    As a result of Defendant CSX Transportation's wanton hiring, training and supervision, Defendant's train derailed damaging Plaintiff as outlined above.

WHEREFORE, PREMISES CONSIDERED, Plaintiff claims compensatory and punitive damages against Defendants to the fullest extent allowed by law.

### Count XIII
### (Common Law Strict Liability)

99.    Plaintiff realleges the above paragraphs of the Complaint as if set out herein in full.

100.    By transporting toxic substances, pollutants and compounds, the Defendants have engaged in an abnormally dangerous, ultra-hazardous and inherently or intrinsically dangerous activity for which they are strictly liable to Plaintiff.

101.    Said conduct is a direct and proximate cause of the injuries and damages to Plaintiff.

WHEREFORE, PREMISES CONSIDERED, Plaintiff claims compensatory and punitive damages against Defendants to the fullest extent allowed by law.

Respectfully submitted,

Jere L. Beasley, BEA020
Attorney for Plaintiff

Rhon E. Jones, JON093
Attorney for Plaintiff

Scarlette M. Tuley, TUL007
Attorney for Plaintiff

OF COUNSEL:
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
Post Office 4160
Montgomery, Alabama 36103-4160
Phone: (333) 269-2343
Fax: (334) 954-7555

**PLAINTIFF REQUESTS A TRIAL BY STRUCK JURY ON ALL ISSUES OF THIS CASE.**

# IN THE CIRCUIT COURT FOR MACON COUNTY, ALABAMA

Robert L. Cheek, III                      *
                                          *
        Plaintiff,                        *
vs.                                       *      Civil Action No.
                                          *
CSX Transportation, Inc.; Ronnie          *      CV - 04 - 163
Dansby; and Fictitious Defendants A       *
through J, who are those persons,         *
corporations, partnerships or entities    *
who acted as principle or agent for or    *
in concert with the other named           *
Defendants and/or whose acts caused       *
or contributed to the damages by the      *
Plaintiff, whose identities are unknown   *
to Plaintiff, but which will be           *
substituted by amendment when             *
ascertained,                              *
                                          *
        Defendant.                        *

## SUMMONS

        This service by certified mail of this summons is initiated upon the written request of
Plaintiff's attorney pursuant to the Alabama Rules of Civil Procedure.

        NOTICE TO:        Ronnie D. Dansby
                          808 County Road 37 South
                          Hope Hull, Alabama 36043-6804

        The Complaint which is attached to this summons is important and you must take
immediate action to protect your rights. You are required to mail or hand deliver a copy of a
written Answer, either admitting or denying each allegation in the Complaint to,

                BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.
                Post Office Box 4160
                Montgomery, Alabama 36103-4160

the attorney for the Plaintiffs. THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN
THIRTY (30) DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS AND
COMPLAINT AS EVIDENCED BY THE RETURN RECEIPT, OR A JUDGMENT BY
DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS
DEMANDED IN THE COMPLAINT. You must also file the original of your Answer with the
Clerk of this Court within a reasonable time afterward.


                                    _Eddie D Hallan_
DATED: _8/24/04_                    Circuit Clerk

## IN THE CIRCUIT COURT FOR MACON COUNTY, ALABAMA

Robert L. Cheek, III

   Plaintiff,

vs.

CSX Transportation, Inc.; Ronnie
Dansby; and Fictitious Defendants A
through J, who are those persons,
corporations, partnerships or entities
who acted as principle or agent for or
in concert with the other named
Defendants and/or whose acts caused
or contributed to the damages by the
Plaintiff, whose identities are unknown
to Plaintiff, but which will be
substituted by amendment when
ascertained,

   Defendant.

Civil Action No.

CV - 04-163

### SUMMONS

   This service by certified mail of this summons is initiated upon the written request of Plaintiff's attorney pursuant to the Alabama Rules of Civil Procedure.

   NOTICE TO:   CSX Railroad
        c/o Bobby H. Pate
        4100 Vanderbilt Road
        Birmingham, Alabama 35217

   The Complaint which is attached to this summons is important and you must take immediate action to protect your rights. You are required to mail or hand deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint to,

       BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.
       Post Office Box 4160
       Montgomery, Alabama 36103-4160

the attorney for the Plaintiffs. THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS AND COMPLAINT AS EVIDENCED BY THE RETURN RECEIPT, OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT. You must also file the original of your Answer with the Clerk of this Court within a reasonable time afterward.

_Eddie D. Mallett_
Circuit Clerk

DATED: _8/24/04_