IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

RECEIVED
2005 DEC 21  P 2: 34

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA.

| | |
|---|---|
| CSX TRANSPORTATION, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | 3:05cv1120-T |
| v.  ) | Civil Action No.: ~~CV-05-1120-C~~ |
| ) | |
| R.J. CORMAN DERAILMENT ) | |
| SERVICES, LLC, R.J. CORMAN ) | |
| RAILROAD GROUP, and R.J. ) | |
| CORMAN COMPANY, ) | |
| ) | |
| Defendants. ) | |

## DEFENDANTS' MOTION TO STAY

Come now defendants R.J. Corman Railroad Group, LLC and R.J. Corman Derailment Services, LLC, (collectively referred to as "R.J. Corman") and hereby move this Honorable Court to stay this action pending the resolution of the underlying lawsuit pending in the Circuit Court of Macon County, Alabama, CV-2004-163, styled "<u>Robert L. Cheek, III v. CSX Transportation, Inc., et al.</u>" on the grounds that the claims and issues in this case are not sufficiently ripe and/or turn upon and are so intertwined with the underlying litigation that this case ought to be stayed pending a better developed record and/or conclusion of the underlying case, and in support thereof state as follows:

1.  In this case, CSX Transportation, Inc. ("CSX") sues R.J. Corman for indemnification and recovery under related theories of negligence, wantonness, breach of contract, and breach of warranty for allegedly starting or allowing fires to start at a CSX derailment clean-up. (See CSX Complaint, ¶ 5, 6, 10, 12, 14, 18). CSX's claims arise

out of and relate to an underlying lawsuit currently pending in the Circuit Court of Macon County, Alabama, CV-2004-163, styled "Robert L. Cheek, III v. CSX Transportation, Inc., et al." (See CSX Complaint, ¶ 5-7).

2. In the Macon County case, Cheek alleges that a CSX train derailed adjacent to his property which caused, among other things, a carload of vinyl acetate to explode, multiple carloads of crossties to burn on his property, and one or more carloads of methyl ethyl ketone (MEK) to spill on his property.[1] (See Cheek Complaint, ¶ 5-12).

3. In that case, Cheek seeks recovery from CSX for (I) trespass by invasion, (II) trespass to real property, (III) nuisance, (IV) trespass, (V & VI) negligent and wanton operation of the train, (VII & VIII) negligent and wanton maintenance of the train, (IX & X) negligent and wanton maintenance of the track, (XI & XII) negligent and wanton hiring, training, and supervision, and (XIII) common law strict liability for transporting toxic substances and engaging in abnormally dangerous, ultra-hazardous and inherently or intrinsically dangerous activities. (See Cheek Complaint). Cheek specifically alleges that "[d]uring the crash and/or clean-up process, multiple carloads of crossties caught fire and burned for at least a day" and that the crossties were piled up by the defendants and/or their agents and servants and left on his property. (See Cheek Complaint, Count IV).

4. In this present case, CSX alleges that R.J. Corman caused or contributed to cause a fire to develop in the area of the derailment which caused damage to CSX's real and personal property, caused damages to cargo being hauled by CSX, and caused

---

[1] The Cheek lawsuit is attached as Exhibit B to the CSX Complaint pending before this Court.

damages to the Cheek property. CSX further claims as damages the attorneys' fees and expenses it is incurring in the <u>Cheek</u> lawsuit. (See <u>Cheek</u> Complaint, ¶ 7).

5.   CSX seeks recovery from R.J. Corman for contractual and common law indemnity and other related claims sounding in contract and tort. In Count V, CSX alleges that Corman, by contract, is obligated to indemnify and hold CSX harmless against the damages, loss, cost, and expenses (including attorneys' fees) being incurred or ultimately incurred in the <u>Cheek</u> lawsuit. The Master Agreement for Derailment Clean-Up and Repair Services[2] (which forms the basis of the contractual indemnity claim) provides, in pertinent part, as follows:

> 6.1   Contractor will indemnify and hold harmless CSXT from and against all loss, damages, costs and expenses, including attorneys' fees, claims, demands and causes of action on account of: (a) injury to or death of all persons (including, but not limited to, employees of Contractor and CSXT), and loss of or damage to property (including, but not limited, property of Contractor and CSXT) caused by or resulting in any manner from any acts or omissions, negligent or otherwise, of Contractor or any of Contractor's subcontractors, agents or employees, in performing or failing to perform any of the Services on the part of Contractor to be performed under this Agreement, regardless of any fault, failure or negligence on the part of any other person including CSXT; (b) the issuance of any false or fraudulent receipts for any work by the Contractor or any of the Contractor's subcontractors, agents or employees; (c) theft, embezzlement or defalcation on the part of the Contractor or any of the Contractor's subcontractors, agents or employees; and (d) any liabilities arising out of a breach by Contractor of its representation and warranties set forth herein.
>
> 6.2   In the performance of Services hereunder, Contractor shall comply with all applicable federal and state laws and regulations with reference to Employer's Liability and Workmen's Compensation Insurance and shall indemnify and hold CSXT harmless from and against all loss, damage, costs and expenses, including attorneys' fees, claims, demands and causes of action of whatsoever nature, due to the violation of such laws or

---

[2] The agreement is marked as Exhibit A to the CSX Complaint.

3

regulations by Contractor, or resulting from any claim of subrogation provided in such laws or regulations or otherwise.

6.3   Contractor shall comply strictly at all times with all other laws, rules, regulations, codes and ordinances, state, federal or municipal, applicable to Services to be performed hereunder, and Contractor expressly agrees to indemnify CSXT and hold it harmless from all liability for any failure or default on the part of Contractor as herein provided.

(Master Agreement for Derailment Clean-Up and Repair Services, p. 6-7).

6.    CSX also seeks recovery under a common law indemnity claim in Count VI by alleging that R.J. Corman is the "active and efficient causes of any injury to the adjacent property and to the property being transported by CSX." (See CSX Complaint, ¶ 24). In its common law indemnity claim, CSX alleges that its actions were merely passive, technical, and constructive and that, under Alabama law, it is entitled to full indemnification for the damages, loss, costs, expenses, and attorneys' fees being incurred by CSX in the underlying case and/or which may ultimately be incurred to satisfy and resolve that lawsuit. (See CSX Complaint, ¶ 23-25).

7.    Lastly, CSX asserts tort and contract claims alleging that R.J. Corman is guilty of negligence, wantonness, breach of contract, and breach of warranty by starting fires or allowing fires to start, all of which CSX contends caused a variety of damages to itself, the adjacent property owner, and the companies who were shipping freight on the CSX train. (See CSX Complaint, Counts I-IV).

8.    R.J. Corman respectfully requests this Court to stay this action because the claims and issues in this case are not sufficiently ripe for adjudication and further overlap with and are so intertwined with the underlying action that it would require this Court and

the parties to litigate the underlying issues and resolve key factual questions in the underlying case. The claims in this case overlap with the issues in the Cheek lawsuit, and the liability and damage issues raised in this case are so intertwined with the underlying case that it would not serve a useful purpose for this Court to expend its judicial resources by engaging in complex and duplicative discovery and piecemeal litigation. It appears to R.J. Corman that considerations of practicality and wise judicial administration would be better served by staying this action until the underlying record is better developed and/or the underlying case is resolved so this Court can grant full relief when the issues in this action are addressed.

9.    In the underlying lawsuit, Cheek seeks recovery for a broad array of alleged wrongs ranging from damages caused by the actual derailment to damages allegedly caused by the clean-up. CSX seeks full indemnity by contract and common law which would require this Court and the parties to engage in extensive discovery to ascertain exactly what occurred in the underlying case, when it occurred during the derailment process, what were the causes of the alleged damages, and what precise damages are recoverable and attributable to the allegations made in this case by CSX. CSX claims damages to its own real and personal property, to CSX cargo (being hauled for third parties), and for damages and clean-up costs to the Cheek property. Adjudicating the claims in this case in its current posture will not only require duplicative discovery, but it will also require this Court to make legal determination regarding issues in the underlying case including, but not limited to, the Cheeks' allegations that CSX is strictly liable for the damages because it involved an abnormally dangerous activity.

10. It is generally recognized that the duty to indemnify is not ripe for adjudication until an insured is in fact held liable in an underlying suit. Guaranty National Insurance Company v. Beeline Stores, Inc., 945 F. Supp. 1510, 1515 (M.D. Ala. 1996); see also, American Commercial Barge Line Co. v. Roush, 793 So. 2d 726, 729 (Ala. 2000) (noting that in an action seeking indemnification, the limitations period does not begin to run until liability has become fixed). In Beeline, this Court noted that "a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before the trial or after all arguments have drawn to a close. In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." Id. Similarly, in Employers' Reinsurance Corp. v. Dillon, 179 F. Supp. 2d 1371, 1374 (M.D. Ala. 2001), the court stayed an action seeking a declaratory judgment regarding an obligation to indemnify on the grounds that the time and effort expended by the court in resolving the issue could be wasted given that the underlying proceedings might well render the present action moot. It further noted that a stay is often preferable in the event the underlying case fails to resolve the matter in controversy. While the Complaint is not drafted as a declaratory complaint (and it does seek money damages), the Court cannot grant full relief until the underlying case is resolved.

11. The defendants removed this action because it had a right, in light of diversity jurisdiction, to have the claims adjudicated in the federal court as opposed to the underlying Macon County Circuit Court. The defendants request this Court to maintain

6

jurisdiction over this case and to stay this action until the underlying record is better developed and/or the underlying case is resolved. CSX will not be prejudiced by a stay of this action and in fact will be better served through an efficient and economical use of resources.

12. The defendants have provided CSX with a copy of this motion to stay, and CSX indicates that it has no objection to staying this action pending a better developed record and/or conclusion of the underlying litigation.

WHEREFORE PREMISES CONSIDERED, the defendants respectfully request this Honorable Court to stay this action until the discovery and record in the underlying case is better developed and/or until the underlying case is resolved and for such other relief the Court may deem as just and proper.

Respectfully submitted,

Steven K. Herndon (HER028)
Andrew W. Christman (CHR024)
Attorneys for Defendants

OF COUNSEL:
Gidiere, Hinton & Herndon
904 Regions Tower
60 Commerce Street
Montgomery, AL 36104
Telephone: (334) 834-9950

CERTIFICATE OF SERVICE

      I hereby certify that the above and foregoing was served on the following by placing a copy of the same in the United States mail, postage prepaid and properly addressed, this 21st day of December, 2005.

Mr. Morris Wade Richardson
Ms. Elizabeth R. Floyd
Adams and Reese/Lange Simpson, LLP
2100 3rd Ave. North, Ste. 1100
Birmingham, AL 35203

                                                           Counsel